IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

Randall J. Bakke, P.C.,           )
                                  )
                  Plaintiff,      )
                                  )
       vs.                        )       Case No.  4:07cv86
                                  )
                                  )
Murex Petroleum Corporation,      )
                                  )
                  Defendant.      )

### MEMORANDUM AND ORDER

Plaintiff Randall J. Bakke, P.C. ("Bakke") claims an overriding royalty interest, pursuant to an Assignment of Overriding Royalty from B & B Oilfield Service, Inc. ("B & B"), in oil, gas, casing head gas and other hydrocarbons produced under leases currently held by defendant Murex Petroleum Corporation ("Murex"). Each party seeks summary judgment in its favor. The court rules that Murex is entitled to judgment as a matter of law. Bakke holds no royalty interest under Murex's leases. B & B released its leasehold interest, thereby extinguishing Bakke's interest. Murex is not a successor or assign of the B & B leases. Consequently, defendant Murex Petroleum Corporation's Motion for Summary Judgment is **GRANTED** (Doc. #26), plaintiff Randall J. Bakke, P.C.'s Motion for Summary Judgment is **DENIED** (Doc. #18), and plaintiff's complaint is **DISMISSED**.

**Factual Background**

The parties do not dispute the following facts for purposes of the summary judgment motions, unless otherwise noted:

B & B granted Bakke an Assignment of Overriding Royalty as compensation for legal services provided by Bakke. The Assignment (Doc. #22-2), effective December 1, 2003, states in relevant part:

> NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which Assignor hereby acknowledges, Assignor ASSIGNS, TRANSFERS and CONVEYS to Assignee, a two and one-half percent (2.5%) overriding royalty interest in the oil, gas, casing head gas and other hydrocarbons produced, saved and sold from the following described lands, located in Bottineau County, State of North Dakota, under any oil and gas leased held by Assignor, or Assignors' successors, heirs and assigns, to wit:
>
> . . .
>
> Said overriding royalty shall be free and clear of all costs of development and operation, but shall bear and pay its proportionate part of applicable taxes and transportation charges, if any.
>
> This Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and their respective successors and assigns.

(Doc. #22-2). The property subject to the Assignment is described as follows:

> Ralph Smith #1 (SE1/4NW1/4-21-163N-82W);
> Ralph Smith #2 (SW1/4NW1/4-21-163N-82W); and
> Tootle #1 (NW1/4SE1/4-22-163N-82W).

B & B subsequently determined it did not own 100% of the royalty interests in the above-described property. It then granted Bakke a second Assignment of Overriding Royalty (Doc. #22-3), effective on March 23, 2004, resulting in the total conveyance of the following overriding royalty interest to Bakke:

2

>2.497613% ORI in Ralph Smith #1;
>2.5% ORI in Ralph Smith #2; and
>2.488465% ORI in Tootle #1.

*Affidavit of Shawn A. Grinolds* (Doc. # 22-4).

In 2007 B & B entered into negotiations to sell its operating interest in the above-described oil wells to Murex. By letter dated April 4, 2007, Murex made an offer to purchase B & B's interest for the sum of $70,000, with certain terms and conditions, effective April 1, 2007. (Doc. #22-5). The offer provides, in part:

> This letter constitutes an offer to B & B Oilfield Services, Inc., ("Seller"), by Murex Petroleum Corporation, ("Buyer") with respect to Buyer's acquisition of all of Seller's right, title and interest in and to the wells described below, all associated leasehold and the interests in the associated spacing units, collectively referred to herein as the "Properties."

*Id.* Rhona Hawkins, as President and Owner of B & B, accepted the offer on April 13, 2007. On June 7, 2007, Rhona Hawkins executed a Bill of Sale, with an effective date of April 1, 2007. (Doc. #22-6). The Assignment section of the Bill of Sale provides, in relevant part:

> Assignor (B & B) hereby transfers, grants, bargains, sells, conveys, assigns and delivers to Assignee (Murex), its successors and assigns, all of Assignor's right, title, interest and estate in and to the wells (the "Wells") described on Exhibit "A", and the spacing units attributable to each well (the "Lands"), said exhibits attached to and made a part of this Assignment for all purposes, together with all of Assignor's right, title, interest and estate in and to the property and rights incident or appurtenant to the foregoing (collectively, the "Property") . . .

(Doc. #22-6). B & B also executed a Release of Oil and Gas Leases on June 7, 2007, whereby B & B did "release, remise and relinquish all his right, title and interest in and to the Oil and Gas Leases . . ." (Doc. #22-7).

Also in June 2007, Murex began acquiring new leases from the mineral owners in the spacing units for the Smith #1, Smith #2, and Tootle #1 wells. In October 2007 Bakke communicated to Murex a claim to a continuing overriding royalty interest in the Smith and Tootle Wells. (Doc. # 22-8). Murex responded that it had purchased well equipment from B & B, but no leasehold interest. Instead, Murex stated, B & B had released its interest in the oil and gas lease, along with the burden of Bakke's overriding royalty interest.   (Doc. #22-9). Further, Murex asserted the leases had lapsed under B & B's ownership due to cessation of production. (Doc. # 22-9).

Donald Hawkins, a representative of B & B and the husband of the President of B & B, has testified by affidavit that during the B & B-Murex negotiations, Waldo Ackerman, the President of Murex, orally assured him that Murex would continue to pay Bakke's overriding royalty in the Smith #1 and #2, and Toole #1 wells "as due." (Doc. # 33). Ackerman has testified by affidavit that he has no recollection of such a conversation with Donald Hawkins, and that he negotiated the transaction with Rhona Hawkins, President of B & B, not Donald Hawkins. (Doc. # 29).

## Summary Judgment Standard

Summary judgment is appropriate if there is not a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56©; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment . . . against a party failing to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. If the moving party has supported its motion for summary judgment, the nonmoving party has an affirmative burden placed on it to

go beyond the pleadings and show a genuine triable issue of fact. *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992). However, the court considering a motion for summary judgment must view the evidence in the light most favorable to the nonmoving party who enjoys "the benefit of all reasonable inferences to be drawn from the facts." *Vacca v. Viacom Broadcasting of Missouri, Inc. et al.*, 875 F.2d 1337, 1339 (8th Cir. 1989) (citation omitted).

Summary judgment is improper if the court finds a genuine issue of material fact; however, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Commercial Union Insurance Co. v. Schmidt*, 967 F.2d 270, 271-72 (8th Cir. 1992) (citation omitted). The issue is whether "the evidence is sufficient to allow a reasonable jury to return a verdict for the nonmoving party." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir. 1995).

### Interpretation of Bill of Sale and Release of Oil and Gas Leases

Before addressing Bakke's causes of action, the court must first construe the Bill of Sale and Release of Oil and Gas Leases signed by B & B. In doing so, the court must determine whether Murex acquired a leasehold interest from B & B, or whether Murex purchased only the personal property associated with the wells.

"[D]ocuments conveying oil and gas interests are subject to the same general rules that govern interpretation of contractual agreements." *Holman v. State of North Dakota*, 438 N.W. 2d 534, 538 (N.D. 1989). Section 9-07-03 of the North Dakota Century Code provides that "a contract must be so interpreted as to give effect to the mutual intentions of the parties as it existed at the time of contracting…." In a written

contract, "the intention of the parties must be ascertained from the writing alone if possible." *Holman*, 438 N.W. 2d at 538.  Determining "[w]hether a contract is ambiguous is a question of law."  *Doeden v. Stubstad*, 755 N.W. 2d 859, 864 (N.D. 2008); *Langer v. Bartholomay*, 745 N.W.2d 649, 655 (N.D. 2008) (citations omitted).  "If a written contract is unambiguous, extrinsic evidence is not admissible to contradict the written language."  *Langer*, 745 N.W.2d at 655 (citations omitted).  On the other hand, if a contract is ambiguous, the court may consider extrinsic evidence to determine the parties' intent as well as the terms of the contract, and these are issues of fact.  *Id.; Doeden*, 755 N.W.2d at 865.

The court finds that the Bill of Sale and Release of Oil and Gas Leases at issue are unambiguous.  The Bill of Sale transferred only B & B's personal property interest in the wells and their appurtenances to Murex.  Murex did not acquire any leasehold interest from B & B through the Bill of Sale.  B & B extinguished any leasehold interest it held by executing the Release of Oil and Gas Leases.

Rhona Hawkins, as President of B & B, executed the Release of Oil and Gas Leases and the Bill of Sale on the same day, although the Bill of Sale included an earlier effective date.  The fact that the Bill of Sale carried an earlier effective date does not mean B & B conveyed its leasehold interest to Murex via the Bill of Sale before it released any remaining leasehold via the Release, as Bakke argues.  The court has found that the Bill of Sale did not convey any leasehold interest.  The court also finds the dates of the Bill of Sale and Release are irrelevant.

Due to the nature of an overriding royalty interest, Bakke's overriding royalty interest which burdened B & B's leasehold interest, was also terminated by B & B's

Release.  *See Reynolds-Rexwinkle, Oil, Inc. v. Petex, Inc.*, 1 P.3d 909, 845 (Kan. 2000) (*quoting Campbell v. Nako Corporation*, 402 P.2d 771 (1965)) ("An overriding royalty interest is 'a royalty interest carved out of the working interest created by an oil and gas lease.  It is an interest in oil and gas produced at the surface free of the expense of production and its outstanding characteristics that its duration is limited by the duration of the lease under which it is created.'").  Bakke's interest in the leases enjoyed no greater status or duration than B & B's interest.  *See Olson v. Continental Resources, Inc.*, 109 P.2d 351 (Okla. 2005) (citations omitted)  ("An overriding royalty interest is created out of the working interest in an oil and gas lease.  It is an interest in the lease out of which it is carved, and cannot be a property interest of greater dignity than the lease itself.  Therefore, the overriding royalty interest does not survive termination of the lease, absent fraud, breach of fiduciary relationship, or an agreement otherwise.").  Since B & B no longer held any leasehold interest, Bakke's overriding royalty interest was also terminated.

 Because the court finds the Bill of Sale and Release of Oil and Gas Leases are not ambiguous, the court may not consider extrinsic evidence to modify the contractual terms reflecting the parties' intent.  *Langer*, 745 N.W.2d at 655.  Therefore, any alleged statements by Waldo Ackerman regarding continued recognition of Bakke's overriding royalty interest are immaterial to interpretation of the Bill of Sale and Release.  The court notes that if Waldo Ackerman did make such a statement during the negotiations between Murex and B & B, such comments are not necessarily inconsistent with the court's findings regarding the meaning of the contract terms.

Bakke also points the court to the language of the Murex offer to B & B, which stated Murex was offering to purchase B & B's leasehold interest as well as its personal property interest in the wells.  The court cannot not consider the extrinsic evidence of the offer language without also considering post-offer events.  Evidence in the record indicates Murex's inquiry prior to closing led it to conclude B & B's leasehold may have lapsed, due to the leases' cessation of operation provision.   Based on that development, Murex requested that B & B release its lease interests rather than convey them to Murex.  The Release allowed Murex to enter into new and different leases, rather than succeed to whatever interest B & B still held under its leases, if any.

The court makes no finding on the occurrence of the alleged conversation between Donald Hawkins and Waldo Ackerman, or on the accuracy or reasonableness of Murex's conclusion that B & B's leasehold interest had lapsed prior to their transaction. The court mentions this extrinsic evidence only to note that it is not inconsistent with the court's interpretation of the Bill of Sale and Release of Oil and Gas Leases as reflecting the intent of B & B and Murex.

### Interpretation of Assignment of Overriding Royalty

Bakke contends Murex must honor his overriding royalty interest because  the following language in the Assignment of Overriding Royalty from B & B essentially amounts to an extension and renewal clause, securing his interest in the leases "held by B & B then in existence," as well as leases subsequently held by B &B's "successors, heirs and assigns":

> NOW THEREFORE, for good and valuable consideration, the receipt
> and sufficiency of which Assignor hereby acknowledges, Assignor
> ASSIGNS, TRANSFERS and CONVEYS to Assignee, a two and one-

>half percent (2.5%) overriding royalty interest in the oil, gas, casing head
>gas and other hydrocarbons produced, saved and sold from the following
>described lands, located in Bottineau County, State of North Dakota,
>**under any oil and gas leased held by Assignor, or Assignors'
>successors, heirs and assigns**, to wit: . . .

*Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Response in Opposition to Defendant's Cross-Motion for Summary Judgment*, at 3 (Doc. #32), *quoting Assignment of Overriding Royalty* (Doc. # 22-3). This claim treats Murex as an assignee of B & B and Murex's leases as derivations of B & B's leases.

An extension and renewal clause, also known as an "anti-washout provision," prevents the lessor from entering into new leases without respecting the overriding royalty interest. An extension and renewal clause "creates an overriding royalty or oil payment out of the working interest to protect against a washout. In effect, the clause provides that the interest shall apply and be part of all future renewals or extensions of the lease." *Reynolds-Rexwinkle, Oil, Inc. v. Petex, Inc.*, 1 P.3d 909, 846 (Kan. 2000) (*citing* Williams and Meyers, MANUAL OF OIL AND GAS TERMS, 431 (8th ed. 1991)). A washout is described as the "[e]limination of an overriding royalty or other share of the working interest by the surrender of a lease by a sublessee or assignee and subsequent reacquisition of a lease on the same land free of such interest." *Id. See also Olson v. Continental Resources, Inc.*, 109 P.2d 351, 355 (Okla. 2005) ("The rights of an overriding royalty owner in future leases are protected if the assignment contains a clause providing the override applies to extensions and renewals of the original lease from which it is carved."). Extension and renewal clauses extend the overriding royalty interest "to new leases obtained on the same property *by the same lessee*." *Avatar*

*Exploration, Inc. v. Chevron, USA., Inc.*, 933 F.2d 314, 319 (5th Cir. 1991) (emphasis added).

An extension and renewal clause prevents the grantor of an overriding royalty interest from unilaterally terminating the underlying leases and then entering into new leases without respecting the overriding royalty interest. In this case, B & B could not have entered into new leases without giving effect to Bakke's interest, if in fact the language in the Assignment amounts to an extension and renewal clause. Although the court doubts that the language in the Assignment of Overriding Royalty constitutes an extension and renewal clause, the court need not reach that decision. B & B released its interest in the leases. Murex entered into new and different leases with the mineral owners. Murex did not succeed to B & B's interest. Extension and renewal clauses extend overriding royalty interests to new leases obtained on the same property by the same lessee. Murex is not the same lessee as B & B, or B & B's successor or assignee. Bakke's overriding royalty interest does not burden Murex's leases.

## Bakke's Claims

### 1. Breach of Duty of Good Faith and Fair Dealing

Bakke claims that Murex's unilateral termination of the leases after acquiring them from B & B violated its duty of good faith and fair dealing toward royalty owners under B & B's leases. Although Bakke recognizes that the North Dakota Supreme Court has "not yet applied a duty of good faith and fair dealing outside the insurance contract," *Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Response in Opposition to Defendant's Cross-Motion for Summary Judgment*, at 16 (Doc. #32), Bakke encourages this court to now recognize this cause of

action. The court finds it unnecessary to address the existence of a duty of good faith and fair dealing because Bakke's claim rests on a faulty assumption: that Murex acquired a leasehold interest from B & B. It did not. The court's finding that B & B did not convey a leasehold interest to Murex disposes of Bakke's claim.

### 2. Breach of Contract

Bakke asserts that "Murex had an obligation to protect Bakke as an overriding royalty owner" because the alleged extension and renewal clause in the Assignment applies to "'any' lease pertaining to the described lands, whether entered into by B & B or its successors and assigns." *Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Response in Opposition to Defendant's Cross-Motion for Summary Judgment*, at 19 (Doc. #32). The court has found that Murex is not a leasehold successor or assign of B & B. Murex is not bound by the asserted extension and renewal clause. B & B effectively released the leases that were burdened by Bakke's overriding royalty interest. Murex's leases are not burdened by Bakke's overriding royalty interest. Bakke has no contractual relationship with Murex and, therefore, no claim for breach of contract.

### 3. Unjust Enrichment and Other Equitable Relief

Bakke's next claim for relief seeks damages for unjust enrichment and other equitable relief. Bakke asserts that Murex "had no legal right to release plaintiff's overriding royalty interests or to instruct and/or consent to B & B's alleged release of plaintiff's overriding royalty interests." *Complaint*, ¶ XVIII (Doc. #5). Bakke argues it would be inequitable to allow Murex to "washout" his overriding royalty interest "by simply unilaterally declaring the original leases terminated and then turn around and

immediately enter into new leases with mineral owner free and clear of Bakke's interests." *Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Response in Opposition to Defendant's Cross-Motion for Summary Judgment*, at 19-20 (Doc. #32). This court's finding that B & B released the leases and did not convey any leasehold interest to Murex bars this claim as well. Murex did not terminate the B & B leases or "wash out" Bakke's royalty interest; B & B did. Bakke has no claim for equitable relief against Murex.

### 4. Interference with Contract

Bakke's final claim for recovery seeks damages for intentional and tortious interference with contract. *Complaint*, ¶ XXVI (Doc. #5). Bakke asserts Murex "instigated B & B's breach of contract without justification." *Complaint*, ¶ XXV (Doc. #5). No evidence in the record supports this cause of action. B & B and Murex entered into an unambiguous contract, evidenced by the Bill of Sale, for the sale of personal property. B & B released the leases burdened by Bakke's overriding royalty interest and conveyed no leasehold interest to Murex, as evidenced by the Release of Oil and Gas Leases. Nothing in the record suggests the agreement between B & B and Murex was anything other than an arms length transaction between two business entities. B & B, not Murex, terminated Bakke's interest. Therefore, Bakke does not have a claim for intentional or tortious interference against Murex.

### Conclusion

Bakke has failed to establish a viable claim for damages or for equitable relief against Murex, and Murex is entitled to judgment as a matter of law. Accordingly, defendant Murex's Motion for Summary Judgment is **GRANTED**, and plaintiff Bakke's

Motion for Summary Judgment is **DENIED**.  Judgment shall be entered in favor of defendant Murex **DISMISSING** this action with prejudice.

Dated this 13th day of November, 2008.

>*/s/ Karen K. Klein*
>Karen K. Klein
>United States Magistrate Judge